UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
AHSEVILLE DIVISION
1:19-cv-00232-RJC

| | |
|---|---|
| KEVIN DALE LEDFORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 12). The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Kevin Dale Ledford ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on November 13, 2014. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 254.) His application was denied first on February 17, 2015, (Tr. 140), and upon reconsideration on July 6, 2015, (Tr. 145). Plaintiff timely filed a request for a hearing on September 9, 2015, (Tr. 151), and an administrative hearing was held by an administrative law judge ("ALJ") on March 22, 2017, (Tr. 161). Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 112–34.) Plaintiff requested a

review of the ALJ's decision, and on July 5, 2018, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 135–39.)

A second administrative hearing was held by the ALJ on December 6, 2018. (Tr. 217.) Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 9–34.) Plaintiff requested a review of the ALJ's decision, but on May 30, 2019, the Appeals council denied Plaintiff's request for review. (Tr. 1–6.) Having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B.   Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the SSA. (Tr. 13.) To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on October 2, 2014 due to physical and mental impairments. (Tr. 256.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 28.) In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

---

[1] Under the SSA, "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27–28.) In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe physical and mental impairments,[2] and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 15–17.) Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff has the RFC

> to perform light work . . . except he is limited to no more than occasional

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: status-post cervical fusion, low back disorder, chronic obstructive pulmonary disease (COPD), a learning disorder, a depressive disorder, and an anxiety disorder. (Tr. 15.)

3

> climbing, balancing, stooping, kneeling, crouching, and crawling. He should avoid concentrated exposure to pulmonary irritants. Mentally, he can perform and maintain concentration for simple, routine, repetitive tasks, he can adapt to infrequent changes in a work setting, he is limited to no more than occasional interaction with the public, coworkers, and supervisors, and he is precluded from work that requires literacy.

(Tr. 17.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 26.) The ALJ thus proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in his RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 27–28.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "small parts assembler,"[3] laundry folder,"[4] and "plastic hospital products assembler."[5] (Tr. 27.) According to the DOT, all of these jobs involve "light work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 27–28.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the SSA. See 42 U.S.C.

---

[3] DOT 706.684-022.
[4] DOT 369.687-018.
[5] DOT 712.687-010.

§§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775.

5

Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff contends that remand is warranted because the ALJ failed to properly evaluate the medical opinion evidence regarding Plaintiff's mental health. Plaintiff contends that this resulted in an RFC assessment that does not adequately account for Plaintiff's mental limitations.

"Medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, and what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The regulations provide that more weight will generally be given to medical opinions from the claimant's "treating sources," which are acceptable medical sources with whom the claimant has or has had an ongoing treatment relationship. Id. § 404.1527(a)(1)–(2), (c)(2). "Opinions from non-treating sources are not entitled to any particular weight." Hylton v. Colvin, No. 4:13cv67, 2015 U.S. Dist. LEXIS 14879, at *15 (W.D. Va. Feb. 9, 2015). Still, ALJs must evaluate every medical opinion, explain the weight given to each medical opinion, and provide the reasons for assigning such weight. King v. Berryhill, No. 2:16cv610, 2017 U.S. Dist. LEXIS 214837, at *25 (E.D. Va. Dec. 19, 2017); see also 20 C.F.R. § 404.1527.

Here, Plaintiff challenges the ALJ's evaluation of the medical opinions of non-treating sources Todd Morton, PhD, and Karen Marcus, PsyD, regarding Plaintiff's mental limitations.[6] Plaintiff presented to Dr. Morton on January 1, 2015 for a consultative psychological evaluation. (Tr. 21.) Of relevance here, Plaintiff reported a high-level of social anxiety. (Tr. 21.) Plaintiff "indicated that he did not go into public settings, and when people came over to visit, he stayed in his bedroom." (Tr. 21.) Dr. Morton opined that "because of [Plaintiff]'s reportedly severe anxiety whenever he left his home, he would not be able to maintain his attention on a simple, repetitive tasks [sic]." (Tr. 21–22.) Dr. Morton further opined that Plaintiff "would have difficulty understanding and recalling work instructions, and the day-to-day stresses of full time work would be overwhelming and cause panic attacks." (Tr. 22.)

The ALJ gave Dr. Morton's opinion little weight. (Tr. 26.) The ALJ noted that "[r]ecords from [Plaintiff]'s primary care provider show that in January 2016, [Plaintiff]'s anxiety was under fair control, and in March 2016, his anxiety symptoms were well controlled with medication." (Tr. 22.) The ALJ also noted that when Plaintiff saw a pain specialist on December 21, 2016, he denied any anxiety. (Tr. 22.)

---

[6] Plaintiff also suggests that the ALJ erred in evaluating the evidence from Joan Ferrara, a school psychologist. Unlike Plaintiff's argument as to the opinions of Dr. Morton and Dr. Marcus, Plaintiff does not point to a specific opinion of Joan Ferrara that the ALJ failed to evaluate or otherwise argue how the evidence from Joan Ferrara supported additional limitations in Plaintiff's RFC. Accordingly, the Court does not address this undeveloped argument. See Duckworth v. Berryhill, No. 5:15-cv-00129, 2017 U.S. Dist. LEXIS 63213, at *15–16 (W.D.N.C. Apr. 26, 2017) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation marks omitted)).

In addition, Plaintiff "made no mention of panic attacks from August 2015 until April 2017." (Tr. 25.) The ALJ thus concluded that Dr. Morton's "documentation of severe social anxiety, and resultant limitations, were based largely on [Plaintiff]'s subjective complaints, and these were not corroborated by the treatment notes of record." (Tr. 26.)

In short, the ALJ evaluated Dr. Morton's opinion and sufficiently explained why he gave it little weight. Accordingly, the ALJ did not err in evaluating the medical opinion of Dr. Morton.

On April 10, 2017, Plaintiff presented to Dr. Marcus for a consultative psychological examination. (Tr. 22.) In addition to conducting a clinical interview, Dr. Marcus administered the Wechsler Adult Intelligence Scale–Fourth Edition and the House-Tree-Person assessment procedures. (Tr. 22–23.) Dr. Marcus opined that Plaintiff "had a mild impairment in attention and concentration and a mild limitation in tolerating the stress and pressure associated with day-to-day work activity." (Tr. 23.) Further, "Dr. Marcus noted that while [Plaintiff] did not seem to have any actual cognitive difficulties understanding instructions, because of personality factors, he may have mild difficulties persisting effectively in following and retaining instructions." (Tr. 23.)

The ALJ explained that he gave Dr. Marcus's opinion great weight because "she had the benefit of examining [Plaintiff] firsthand, and her assessment is supported by diagnostic test results, clinical observation, and [Plaintiff's] history." (Tr. 25.) At the same time, however, the ALJ "found [Plaintiff] more socially limited

8

Case 1:19-cv-00232-RJC   Document 15   Filed 07/06/20   Page 8 of 10

than that determined by Dr. Marcus, and thus that portion of her opinion is given less weight." (Tr. 25.) In explaining this conclusion, the ALJ stated "[a]lthough [Plaintiff] did not routinely complain of panic attacks, or depression/anxiety that precluded his ability to leave home, interact with his family, or present for necessary medical treatment, the undersigned has given [Plaintiff]'s subjective complaints every consideration in finding that his interaction with supervisors, coworkers ,and the public, should be no more than occasional." (Tr. 25.)

As with the opinion of Dr. Morton, the ALJ evaluated Dr. Marcus's opinion and sufficiently explained why he gave little weight to her opinion as to Plaintiff's social limitations and great weight to the remainder of her opinion. Accordingly, the ALJ did not err in evaluating the medical opinion of Dr. Marcus.

The ALJ's resulting RFC assessment is supported by substantial evidence. The ALJ explained that he accommodated Plaintiff's social anxiety by including a limitation to no more than occasional interaction with the public, coworkers, and supervisors, as well as a limitation to infrequent changes in the workplace. (Tr. 25–26.) As to the ALJ's conclusion that Plaintiff can perform and maintain concentration for simple, routine, repetitive tasks, the ALJ noted that Plaintiff's test results placed him in the low average range of intellectual functioning. (Tr. 24.) Although the ALJ recognized that Dr. Marcus suggested Plaintiff's scores were likely an underestimate of Plaintiff's actual functioning and that she supported this by citing to multiple inconsistencies in Plaintiff's performance during the evaluation, the ALJ nonetheless concluded that based on the test results and the claimant's school records, Plaintiff

9

was limited to simple, routine, and repetitive tasks. (Tr. 24.) The ALJ explained that "[w]hile the combined effect of [Plaintiff]'s impairments likely preclude the performance of complex or detailed work tasks, his performance on recent intellectual testing and mental status evaluations were absent evidence that he could not perform simple, routine, repetitive tasks." (Tr. 26.)

Therefore, the Court concludes that the ALJ did not err in evaluating the medical opinion evidence, and substantial evidence supports the ALJ's resulting RFC assessment.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED**;

3. Plaintiff's and Defendant's motions for extension of time, (Doc. Nos. 9, 11), are **DENIED as moot**; and

4. The Clerk of Court is directed to close this case.

Signed: July 6, 2020

Robert J. Conrad, Jr.
United States District Judge